FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 FEB -6  AM 11: 43
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CRAIG MISTLER | * |
| | * |
| | * |
| v. | *   Civil No. – JFM-15-3458 |
| | * |
| WORTHINGTON ARMSTRONG VENTURE | * |

******

## MEMORANDUM

Plaintiff has brought this action against Worthington Armstrong Venture (WAVE). He alleges that the termination of his employment violated the Family and Medical Leave Act, the Americans with Disabilities Act, and the Maryland Fair Employment Practices Act. Discovery has been completed, and defendant has moved for summary judgment. The motion will be granted.

I.

Defendant, a joint venture between Worthington Industries and Armstrong World Industries, is a world-wide leader in the production of suspended ceiling systems. Plaintiff was employed at its facility in Aberdeen, Maryland. Safety is a priority at defendant because manufacturing environments are inherently dangerous. Accordingly, defendant has an attendance policy which, *inter alia*, states that employees who need to leave work early must give prior verbal notice and receive the approval of the supervisor/facilitator or manager prior to the end of the scheduled shift. Employees of defendant are also required to clock in when they arrive at work and clock out when they leave by use of a biometric time clock.

Plaintiff requested and was approved for intermittent FMLA leave in 2011. He was granted leave 43 times. He was never denied any properly lodged requests to leave a shift early when he was experiencing shoulder pain or discomfort – the basis of his FMLA leave. Except for one occasion in February 2012, when he had permission not to do so due to a medical emergency, plaintiff always clocked out.

On September 24, 2013, plaintiff experienced shoulder pain at lunch. He left the Aberdeen plant after having left a note on the desk of his supervisor, George Seiverd. Seiverd was himself on leave on September 24th. Plaintiff has testified that he did not know that Seiverd was absent but he admits not having seen him. If Seiverd could not be located, shipping department employees, such as plaintiff, had the option of notifying the Shipping Coordinator or use one of the telephones located at various locations throughout the shipping office to contact another supervisor or Human Resources.

When plaintiff's absence was noticed, a search was conducted for him, lasting between 60 and 90 minutes. Eventually, it was reported to management that plaintiff's car was gone. The search was concluded. After the end of plaintiff's shift, the note that he wrote to Seiverd was discovered on Seiverd's desk.

The following day plaintiff called in and requested FMLA leave. That leave was granted. However, according to plaintiff, when he spoke with Seiverd, Seiverd stated that defendant was making "a big deal" about his having left the premises the day before.[1] He was requested to come in to the office the following day to meet with Daniel Gruscavage, the North American Supply Chain Manager, Michelle Bloxham, the Manager of Human Resources, and Matt

---

[1] Plaintiff also asserts that approximately one year earlier, Seiverd had written an email stating that he hoped plaintiff's FMLA leave would be terminated. It was not, and the fact that Seiverd was not involved in the decision-making process and the fact that there was no proximity in time between that and the termination of plaintiff's employment, makes the email irrelevant.

2

Costello, another member of the Human Resources Department. After giving an opportunity to plaintiff to give an explanation for his conduct, plaintiff said that he did not think it was a big deal to leave without notice and the approval of management. Plaintiff was asked to step into the greeting area, and Gruscavage, Bloxham, and Costello discussed the situation with Pat Hamlin, defendant's general manager. It was decided that termination of plaintiff's employment was appropriate.

Seiverd was not involved in the decision-making process. According to the deposition testimony of Bloxham, that is not contradicted by plaintiff, this decision was the same that had been whenever someone had left his shift without notice and approval.

II.

Plaintiff alleges that his employment was terminated in retaliation for his having taking FMLA leave. However, he had been granted FMLA leave many times in the past, and he was compensated for the time that he missed. There is nothing in the record to suggest that the termination of his employment was in retaliation for him having taken FMLA leave or to suggest that defendant's proffered reason for the termination of employment, his failure to give verbal notice and obtain permission from defendant – for his absence was pretextual.

Plaintiff further contends that in the past he had given written notice to Seiverd of his intent to leave early. However, he can provide no specifics about those requests. Moreover, in his charge filed with the EEOC, plaintiff alleged under oath that he was told by Bloxham that he only had to "verbally inform [his] supervisor" that he was unable to work. Plaintiff contradicts the record in an attempt to create a factual issue by leaving out the word "verbally" and then stating that Bloxham "never informed how the notice ought to be given." A party cannot create a genuine issue of material fact for summary judgment purposes by submitting an affidavit

contradicting his own prior testimony. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984).

### III.

Plaintiff also asserts that the termination of his employment was in retaliation for his having requested a reasonable accommodation under the ADA. In fact, plaintiff never requested a reasonable accommodation under the ADA, and he was granted a reasonable accommodation – being permitted to take leave whenever his arm and shoulder hurt – for his condition. In any event, assuming that he had requested a reasonable accommodation under the ADA, there is no evidence that suggests that the termination of his employment was in retaliation for that request.

A separate order granting defendant's motion for summary judgment is being entered herewith.

Date: 2/3/17

_/s/ J. Frederick Motz_
J. Frederick Motz
United States District Judge